COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-303-CV
 
 
 
IN 
THE MATTER OF H.M.L. 
 
 
------------
 
FROM 
THE 97TH DISTRICT COURT OF MONTAGUE COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
        In 
two issues, Appellant H.M.L. complains that the trial court abused its 
discretion in modifying his disposition and committing him to T.Y.C.  
Because we hold that the trial court did not abuse its discretion, we affirm the 
trial court’s modification and commitment order.
        H.M.L. 
was adjudicated for aggravated sexual assault of his stepsister and placed on 
probation. The probation order included the following language:
 
IT 
IS FURTHER ORDERED, ADJUDGED AND DECREED that the Juvenile, [H.M.L.], comply 
with and fully abide by the rules and policies of the Youth Center of the High 
Plains [“the center”] and fully and completely engage in all aspects of the 
program including class attendance, physical training, counseling sessions and 
all other character building activities until such time as he successfully 
completes the course of the program or until further order of the court.
 
The 
order further provided in pertinent part:
 
IT 
IS FURTHER ORDERED, ADJUDGED AND DECREED that H.M.L. . . . be and is hereby 
placed on probation . . . upon the following reasonable and lawful terms and 
conditions:
 
That 
the said juvenile shall:
 
(a) 
. . . ;
 
(b) 
be placed at the Youth Center of the High Plains[,] the child will remain at 
said Facility until successfully discharged and while in placement, be in the 
care and control of the placement facility director and shall abide by the rules 
set forth by the custodians;
 
(c) . . . ;
 
(d) 
abide by all rules and regulations of the placement facility at all times; [and]
 
(e) 
submit to counseling and continue all programs prescribed by the placement 
facility until successfully discharged.
 
        Evidence 
showed that H.M.L. was unsuccessfully discharged from the center.  When he 
entered the center, H.M.L. received a printed version of the behavior norms that 
all residents were expected to follow.  A resident must earn a minimum 
point requirement to progress in each program.  Additionally, a resident 
must pass a minimum number of behavior contracts on a weekly basis to progress.
        The 
evidence showed that H.M.L. first entered the intensive intervention program, 
designed to help residents follow directions of authority and learn basic social 
skills and to introduce concepts of anger control and rational thinking.  
H.M.L. was noncompliant and put forth little effort to complete the program, 
which typically takes a resident ninety days.  After H.M.L. had been in the 
program 153 days (twenty-two weeks) without completing it, the staff at the 
center chose to place him in the Constructive Living Unit (“CLU”) in the 
lowest phase.  He did not attain this transfer through any meritorious 
efforts of his own.  At the time of the transfer, H.M.L. had earned the 
minimum acceptable point level for only 43 of the 153 days and had passed his 
behavior contract only 5 times out of the 22 weeks.
        In 
the CLU, H.M.L. ignored staff’s directions and continued his noncompliance.  
He was personally warned several times by Rick Smithson, the lead counselor and 
program specialist at the center, that his refusal to work the CLU program could 
result in an unsuccessful discharge.  He was also warned by the entire 
treatment team on two different occasions.  Out of the 70 days he spent in 
the CLU, H.M.L. only earned the required minimum point level for 17 days; he 
only passed his behavior contract twice during the ten weeks.  The staff 
members at the center agreed that he needed to be unsuccessfully discharged.  
During H.M.L.’s entire time at the facility, he never earned a phase movement, 
or promotion.  He did, however, receive nine disciplinary interventions for 
aggressive behavior.
        Additionally, 
H.M.L.’s sex offender therapist had provided information to Smithson that 
H.M.L.’s behavior was disruptive during group therapy, that he did not 
complete assignments, and that he breached his agreement to pass a polygraph 
regarding the sexual assault of his stepsister.
        Smithson 
stated that H.M.L. would be a risk to the community because of his narcissism, 
aggression, refusal to take responsibility for his actions, resistance to 
authority, lack of remorse, minimizing of the impact of the assault on his 
stepsister, self-justifying, and lack of candor regarding his delinquent 
conduct.  Smithson recommended that H.M.L. be placed in a secure 
correctional environment with sexual offender treatment.
        After 
H.M.L. was unsuccessfully discharged, the State filed a petition to modify his 
disposition based on the alleged violations of the conditions set out above.  
All of the above evidence was admitted.
        Additionally, 
the Montague County juvenile probation officer, Rebecca Dickson, testified that 
T.Y.C. was the best place for him.  Her reasons included the facts that he 
is a high-risk sex offender, his mother had made no arrangements to have the 
stepsister removed from the home, the placement in the center had not worked, 
and the other potential programs she knew of, one of which was no longer under 
contract with Montague County, were not desirable.  She also testified that 
T.Y.C. has a sex offender treatment program that is supposed to be one of the 
best in the State.  She admitted that it is operating at full capacity but 
stated that eventually H.M.L. would get admitted into the program. In her 
report, she provided that H.M.L.
 
is 
in need of a highly structured environment which will offer a long term sex 
offender program. Since [H.M.L.] is considered to be a high risk candidate[,] it 
is recommended that he be modified to a Sanction Level 6 and be placed in the 
Texas Youth Commission.  It is also recommended that [he] register as a sex 
offender.
 
        In 
his first issue, H.M.L. contends that the trial court abused its discretion in 
finding that H.M.L. violated the probation order because there is insufficient 
evidence to support the trial court’s findings that H.M.L. violated paragraphs 
(b), (d), and (e).  In his second issue, Appellant complains that the 
evidence is insufficient to support the modification and commitment to T.Y.C.  
We will not reverse the trial court's decision unless the court abused its 
discretion.[2]  An abuse of discretion does not 
occur as long as some evidence of substantive and probative character exists to 
support the trial court's decision.[3]  Based on 
our review of the evidence detailed above, we cannot say that the trial court 
abused its discretion in finding that Appellant had violated the probation 
conditions set out above.  Consequently, we also cannot say that the trial 
court abused its discretion in modifying the disposition.  Finally, based 
on all the evidence about H.M.L., the risks he poses to the community, and the 
options and resources available, we cannot say that the trial court abused its 
discretion in committing H.M.L. to T.Y.C.  We overrule both of H.M.L.’s 
issues.
        Having 
overruled H.M.L.’s two issues, we affirm the modification and commitment order 
of the trial court.
 
 
                                                          LEE 
ANN DAUPHINOT
                                                          JUSTICE
 
 
PANEL 
B: DAUPHINOT, HOLMAN, and GARDNER, JJ.
 
DELIVERED: 
June 3, 2004

 
NOTES
1.  
See Tex. R. App. P. 47.4.
2.  
In re C.J.H., 79 S.W.3d 698, 702 (Tex. App.—Fort Worth 2002, no pet.).
3.  
Id.